Affirmed and Memorandum Opinion filed November 24, 2004













Affirmed
and Memorandum Opinion filed November 24, 2004.



 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01108-CV

____________

 

ATSER,
L.L.C., ATSER CORPORATION, AND ATSER, L.P., Appellant

 

V.

 

JOHN
RISHER, Appellee

 



 

On Appeal from the 157th District Court

Harris County,
Texas

Trial Court Cause No. 00-17330

 



 

M E M O R A N D U M  O P I N I O N








Appellants, Atser, L.L.C., Atser Corporation,
and Atser, L.P., bring this appeal from a jury verdict awarding appellee John
Risher incentive compensation and attorneys=
fees.  In four issues, appellants contend
that the trial court erred by finding the employment contract between appellants
and appellee to be ambiguous; by allowing the jury to decide a question of
contractual obligation as a matter of fact; by imposing a contractual
obligation on appellants that exceeded those allegedly laid out in the
contract; and by awarding appellee=s attorneys
an amount greater than what appellant claims would have been awarded under the
fee arrangement between appellee and his attorneys.  Because all dispositive issues are clearly
settled in law, we issue this memorandum opinion. See Tex. R. App. P. 47.4.  We affirm. 

Background

In late 1998, appellee entered
negotiations with appellants concerning his potential employment as appellants= Vice
President of Construction Services. 
Included in the negotiations were discussions regarding appellee=s incentive
pay; that is, appellee would be paid a base salary and then would be able to
earn additional compensation as a result of 
his achieving certain goals. 
Appellants were successful in hiring appellee away from his former
employer; he began work for them in January of 1999.  

At the end of 1999, a dispute
arose between appellants and appellee regarding the amount of his incentive
compensation.  Due to the parties= failure
to reach an agreement concerning the incentive compensation, appellants
terminated appellee=s
employment in January of 2000. 
Appellants sued, claiming breach of contract and requesting, inter
alia, the incentive compensation for 1999. 
At trial, the jury found that appellants had failed to comply with the
employment agreement, awarding appellee $80,256[1]
in damages and $29,302.40 in attorneys= fees.[2]  Appellants then brought this appeal; at issue
is whether the contract as written is ambiguous and whether the trial court
awarded excessive attorneys= fees.

Contract Ambiguity








In three
interrelated issues, appellants argue that the contract unambiguously capped
incentive pay and that trial court erred in concluding that the contract was
ambiguous.  Furthermore, appellants argue
that since the contract was not ambiguous, the fact issue of whether appellants
violated the agreement should not have been submitted to the jury, and the
court therefore improperly awarded damages in excess of the $36,000 cap on
incentive pay (i.e., appellee could receive no more than $36,000 from
appellants).  We disagree.

We construe contracts according
to the rules governing contract interpretation. 
See J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003); Coker v. Coker, 650 S.W.2d 391, 393-94
(Tex.
1983).  Whether an ambiguity exists in a
contract is a matter of law.  Tex.
Farm Bureau Mutual Ins. Co. v. Sturrock, 146 S.W.3d 123, 126 (Tex. 2004).  A contract is ambiguous if it is susceptible
to two or more reasonable interpretations. 
Id.  If a contract is ambiguous, its
interpretation is a fact question for the jury. 
Coker, 650 S.W.2d at 394.

In this case, the agreement
regarding appellee=s
incentive pay, specifically, the section entitled AExceeding
[Construction Manager] Division New Sales Contracts Goal in FY1999 and FY2000,@ gives
rise to two different but reasonable interpretations.  At the top of the agreement, under the
heading AI.
Components of Pay 1999,@ is a
chart, ATotal
Targeted Compensation,@ that
lists appellee=s ABase
Salary@ as
$90,000 and his ATarget
Incentive@ as $36,000.  The chart also breaks down the percentage of
the total each amount represents.  




 
 
 Total
 Targeted Compensation
 
 
 $126,000
 
 
 
 
 Base
 Salary
 
 
 $90,000
 
 
 
 
 Target
 Incentive
 
 
 $36,000
 
 
 
 
 Pay Mix
 
 
 71% Base, 29% Incentive
 
 











Directly under this chart is the
following sentence: AYour
actual salary and incentive pay will depend upon your individual performance
against targets.@  Directly under this sentence, under the
heading AII.
Incentive Pay,@ is a second chart, listing the
ways in which appellee would be able to earn incentive pay.  One of these is AExceeding
CM Division New Sales Contracts Goal in FY1999 and FY2000@ and
provides that if appellee were to meet his new contracts goal, he would receive
A1.5% of
CM Division New Signed Contracts in Excess of Goal.@  Each of the three ways in which incentive pay
can be earned is given an amount that represents a APercentage
of Target Incentive@;
exceeding the new contracts goal accounts for 50% of ATarget
Incentive,@ or $18,000 in the chart.  The final row in the chart shows the
percentages totaling to 100% and the dollar amounts totaling to $36,000.  




 
 
  
 Components of Incentive Pay
 
 
  
 % of Target Incentive
 
 
  
 YR 1999 Targeted Earnings @ 100% Quota
 
 
  
 YR 1999 Amount
 
 
  
 YR 2000 Targeted Earnings @ 100% Quota
 
 
  
 Payment Frequency
 
 
 
 
  
 A. Meeting CM Division
 Gross Margins of 39%, Net Sales and Staff Development Goals on Initial Seven
 Projects (Exhibit I, II, III)
 
 
  
 20%
 
 
  
 $7,200
 
 
  
 $7,200
 
 
  
 0.62% of CM Division GP
 
 
  
 Annual
 
 
 
 
  
 B. Meeting CM Division
 New Signed Contracts Goal in FY99 Totaling $1,000,000, FY 2000 Total
 $1,500,000
 
 
  
 30%
 
 
  
 1.08% of CM Division New
 Signed Contracts
 
 
  
 $10,800
 
 
  
 1.08% of CM Division New
 Signed Contracts
 
 
  
 Semi-Annually
 
 
 
 
 C. Exceeding CM Division
 New Sales Contracts Goal in FY 1999 and FY2000
 
 
  
 50%
 
 
  
 1.5% of CM Division New
 Signed Contracts in Excess of Goal
 
 
  
 $18,000
 
 
  
 1.5% of CM Division New
 Signed Contracts in Excess of Goal
 
 
  
 Semi-Annually
 
 
 
 
  
 Total Target Incentive
 Earnings
 
 
  
 100%
 
 
  
  
 
 
  
 $36,000
 
 
  
  
 
 
  
  
 
 




 

Under this chart is the
following: AAchievement toward each of these
goals will be tracked separately. 
Achieving all of the above objectives will allow you to earn the
targeted compensation.@








The dispute centers on the third
method of receiving incentive pay. 
Appellee performed well at his job, meeting and, according to him,
exceeding his stated goals.  Appellants
claim that the agreement caps incentive pay, since, among other things, it uses
specified dollar amounts for each component in the second table; uses the term ATotal
Target Incentive Earnings@; and
totals the percentages of target incentives at 100%.  Appellee, on the other hand, urges that the
term Atarget@ should
be construed only as a goal and not as a cap or maximum.  Had appellants intended the term Atarget@ to mean Acap,@ appellee
contends, they couldCand
shouldChave used
the term in the contract.  Appellee also
points to parol evidence of 1) negotiations, during which appellee rejected an
initial draft in which incentive pay was capped at $36,000 since Ait did
not pay him enough,@ and 2)
the circumstances under which appellee was lured away by appellants from his
former employer.  In other words,
appellee reasons that had incentives been capped at $36,000, he would have been
making less money at his new job with appellants, and that this interpretation
would defy the logic of leaving a stable, better-paying job.

The agreement is therefore
susceptible to two different interpretations, both of which we find to be
reasonable.  As a result, the contract is
ambiguous; the trial court was therefore correct in ruling it as such and
submitting the issue to the jury. 
Appellants= first
three issues are overruled.

Attorneys= Fees

In their fourth and final issue,
appellants claim that, were the jury award to be reduced, the trial court=s award
of attorneys= fees would be improper in that
it would exceed what appellee=s
attorneys would have received under their contingent fee agreement.  Since we have overruled appellants= first
three issues and thus have allowed the damages award to stand, we need not
reach appellants= fourth
issue.  Accordingly, appellants= fourth
issue is overruled.

We affirm the judgment of the trial
court.

 

 

 

 

 

/s/        Adele Hedges

Chief
Justice

 

 

 

 

Judgment rendered and Memorandum Opinion filed November 24, 2004.

Panel consists of Chief Justice Hedges and Justices Fowler and Seymore.











[1]  Included in this
amount was $7,000 appellants conceded before trial that they owed to appellee.





[2]  The jury also
awarded appellee $15,000 in attorneys= fees
for an appeal to the Court of Appeals and $5000 each for two possible appeals
to the Texas Supreme Court.